**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MICHAEL ANDREW SKIRNICK,    )
              Plaintiff,     )
                     )
              v.         )     CAUSE NO.: 3:15-CV-239-JEM
                     )
CAROLYN W. COLVIN,    )
Acting Commissioner of Social Security    )
Administration,    )
              Defendant.    )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on June 4, 2015, and on Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed by Plaintiff on October 27, 2015. The Commissioner filed a response to Plaintiff's brief on February 3, 2016, and on February 16, 2016, Plaintiff filed a reply.

**I.      Procedural Background**

In August 2012, Plaintiff applied for disability insurance benefits with the United States Social Security Administration ("SSA"), alleging that he had become disabled as of December 20, 2008. Plaintiff's claim was denied initially and on reconsideration. On January 14, 2014, Administrative Law Judge ("ALJ") Christa Zamora held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. On February 26, 2014, the ALJ issued a decision denying Plaintiff benefits on the ground that Plaintiff was not disabled.

In the opinion, the ALJ made the following findings under the required five-step analysis:

1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2.     The claimant did not engage in substantial gainful activity during the period from December 20, 2008, the alleged onset date, through his date last insured.

3. The claimant had the following severe impairment: status post burns to his bilateral forearms.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant, through the date last insured, had the residual functional capacity ("RFC") to lift and/or carry and push and/or pull up to 50 pounds occasionally and up to 25 pounds frequently, stand and/or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. He could frequently perform handling and fingering bilaterally.

6. The claimant was unable to perform any past relevant work.

7. The claimant was 36 years old, which defined as a younger individual age 18-49 on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not she has transferable job skills.

10. Considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from December 20, 2008, the alleged onset date, through December 31, 2009, the date last insured.

On April 27, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. On June 6, 2015, Plaintiff filed the underlying Complaint seeking reversal of the adverse SSA determination.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Facts

On December 20, 2008, Plaintiff's arms were severely burned while he was welding. Plaintiff received treatment for the burns and a broken right ulna, as well as other severe issues related to the burns. Plaintiff testified that he could not close his hands, move his thumbs, or bend his wrists. Plaintiff also complained that he was in severe pain and frequently dropped things due to his weak and inconsistent grip. Plaintiff also has a history of anxiety, depression, and bipolar disorder, dating back to 2008.

## III.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Does the impairment meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-

8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**IV.    Analysis**

   A.    <u>Listing Analysis</u>

Plaintiff contends that the ALJ failed to adequately address whether Plaintiff was presumptively disabled under the Listing of Impairments, specifically Listing 8.08. Plaintiff argues that he is disabled under Listing 8.08 because he has burns with skin lesions and that these injuries seriously limit the use of more than one extremity. The Commissioner contends that, though brief, the ALJ's analysis of Plaintiff's injuries under Listing 8.08 was sound because Plaintiff's alleged limitations were not severe enough to qualify as a listing impairment.

At Step Three of the disability inquiry, an ALJ must determine whether the claimant's impairments meet or equal the criteria of an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An individual suffering from an impairment that meets or is the equivalent of the description of a Listing is conclusively presumed disabled, and no further analysis is required. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment," and he "bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir.2006) ("[The plaintiff] has the burden of showing that his impairments

6

meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."); *see also Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir.2009) (holding that the "claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing"). Whether a claimant's impairment equals a listing is a medical judgment, and an "ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Furthermore, the "ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Id.* at 668.

The ALJ's listing analysis consisted of four sentences and concluded by stating that Plaintiff did not meet the "threshold requirements" of the listings. The ALJ did not compare Plaintiff's conditions to the requirements of the listings, but merely stated that "no treating or examining physician indicated diagnostic findings that would satisfy any listed impairment." AR 15.

This type of "perfunctory" analysis is reversible error. *Barnett*, 381 F.3d 664 at 668. While the ALJ did state that she had considered "listings 1.02, 1.07, 1.08, 8.08, and 11.14," she did not detail any analysis of those listings. For example, Listings 8.00 and 8.08 apply to burn skin lesions lasting longer than twelve months and seriously limiting a claimant's use of his extremities. Facially, these listings appear directly applicable to Plaintiff's case, yet the ALJ gave only a cursory explanation that the listing requirements were not met.

This Court will not substitute its judgment for that of the ALJ. *See Boiles*, 395 F.3d at 425. Accordingly, rather than consider whether Plaintiff's limitations meet the requirements of the listings, the Court will remand for the ALJ to further develop her analysis of the appropriate listings.

B.    Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by concluding that Plaintiff could handle and finger for over five and one-third hours during the workday with no other manipulative limitations; lift or carry twenty-five pounds for over five and one-third hours during the workday; and lift up to fifty pounds. Specifically, Plaintiff argues that the ALJ made these conclusions without a sufficient evidentiary basis, despite medical opinion testimony detailing Plaintiff's limitations. Plaintiff points out that the ALJ's opinion was inconsistent with expert medical opinions provided in the record. The Commissioner argues that the ALJ is given authority to resolve disagreements between conflicting medical opinions in determining RFC. The Commissioner asserts that the ALJ "generously" determined that Plaintiff had continued manipulative impairments even though state-agency reviewers had determined that Plaintiff was capable of medium work.

RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996).

The ALJ determined that Plaintiff could perform medium work – including lifting, carrying, pushing, or pulling up to fifty pounds occasionally and up to twenty-five pounds frequently, standing or walking up to six hours in an eight-hour work day, and sitting up to six hours in an eight-hour work day – and also had the ability to frequently handle and finger with both hands. The vocational expert testified that there would be no jobs available to someone who could only ocassionally handle and finger, but that there would be some jobs available to someone who could frequently handle and finger.

The ALJ's RFC analysis referenced two categories of medical opinions, one examining opinion prepared by the Agency's own medical examiner and several non-examining opinions prepared by State agency consultants who reviewed Plaintiff's medical history. The ALJ gave little weight to the Agency medical examiner's findings that the claimant had "limited range of motion in his upper extremities, decreased strength in his upper extremities, abnormal grip strength bilaterally, and poor fine finger manipulative abilities" because those observations were made after the relevant time period. AR 17. An ALJ must consider medical evidence obtained after the claimant's date last insured, because such evidence is "relevant to a determination of a claimant's condition during that period." *Sierra v. Colvin*, 2:14-CV-298-TLS, 2016 WL 1128260, at *4-5 (N.D. Ind. March 23, 2016) (quoting *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984)).

In deciding the weight to give the Agency medical examiner's opinions, the ALJ stated that there was evidence that Plaintiff was able to "change his own wound dressing, lift weights, get on a top bunk, and play cards during the time period at issue." AR 17. However, the ALJ failed to discuss that, after Plaintiff had lifted weights, his treating physician forbade him from continuing

to do so. That the ALJ relied on Plaintiff's weight lifting during the relevant time period to support her conclusions on Plaintiff's RFC is unsound. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("Further, at least one of the activities was a precipitating event that led to one of Mr. Scrogham's doctor visits. Surely, this type of ill-advised activity cannot support a conclusion that Mr. Scrogham was capable of performing fulltime work.").

The ALJ also discredited the medical opinions of the non-examining State agency consultants. The consultants concluded that the Plaintiff could perform medium work with no manipulative limitations, but the ALJ explicitly discounted their opinion because they did not have access to the entire record, including Plaintiff's testimony on his own limitations, and because the record revealed that Plaintiff had limited range of motion and weakness in his right forearm and hand, and had decreased sensation in his forearms and swelling in both hands.

The Commissioner repeatedly argues that the ALJ was "generous" in her RFC findings, assigning Plaintiff moderate limitations although there was evidence in the record from the State consultants, supporting a no-limitation finding. However, in discounting both medical opinions relevant to Plaintiff's RFC, the ALJ failed to articulate any other medical evidence supporting her conclusions. The ALJ discredited the Agency examiner's findings that Plaintiff suffered from physical limitations, but also discredited the consultants' no-limitation finding because the record revealed those same physical limitations. The Court finds this logically inconsistent at worst, and lacking a "logical bridge" affording meaningful judicial review at best. *See Giles*, 483 F.3d at 487.

In short, the ALJ did not adequately explain how she arrived at the conclusion that Plaintiff could frequently handle and finger, lift and carry twenty-five pounds, and lift fifty pounds despite his limited range of motion, limited grip strength, and poor manipulative abilities. She discredited

both medical opinions on the subject, and gave no explanation of how any other medical or non-medical evidence supported her conclusion on Plaintiff's RFC. Accordingly, on remand, if Plaintiff is found not to meet the Listings discussed above, the ALJ is directed to "include a narrative discussion describing how the evidence supports each [RFC] conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" consistent with this opinion.   SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996).

C.      Plaintiff's Testimony

The ALJ concluded that Plaintiff's testimony on his own physical limitations should be given little weight because it was inconsistent with other evidence in the record. Plaintiff argues that this was reversible error because the ALJ did not properly support that finding. The Commissioner argues that the ALJ's determination concerning Plaintiff's symptom testimony was proper, having been made after fully assessing the record, weighing the required factors, and resolving conflicts in the record evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv)The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and

restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)).

In determining that Plaintiff's testimony regarding his physicial condition and limitations was outweighed by other evidence, the ALJ looked to medical records during the relevant time period. The ALJ found that those records showed that the Plaintiff had performed some activities, such as playing cards, climbing into a bunk bed, and lifting weights, that refuted his testimony regarding his limitations. As discussed above, the ALJ did not properly incorporate at least some of these ill-advised activities into her opinion. The ALJ also found that because Plaintiff had refused medication and medical treatment at various times throughout the relevant period, his subjective testimony on his symptoms should be given little weight.

When considering non-compliance with treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("[T]he ALJ concluded from [the plaintiff]'s gap in treatment . . . that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

In her opinion, the ALJ made no attempt to discern Plaintiff's reasons for avoiding treatment and medication. The record in this case contains evidence that, shortly before Plaintiff refused to take prescribed opioids, he quit using heroin, and Plaintiff specifically testified that he does not take pain medication because of his past heroin problem. AR 14, 44, 55, 59. This evidence, along with additional evidence in the record, suggests that Plaintiff did not comply with recommended medical treatment because of his recent substance abuse. AR 35, 37, 41, 44, 59-60. In her examination of Plaintiff, the ALJ asked why Plaintiff currently does not take any pain medications, but asked no questions about why he did not take them at the relevant time and why he did not comply with or seek out other treatments. The ALJ's opinion did not include any possible explanation for Plaintiff's non-compliance.

An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints" and states that the ALJ must "explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms." SSR 16-3p, 2016 WL 119029, at *8 (Mar. 16, 2016).[1] In considering a claimant's treatment history, the ALJ "may need to contact [the claimant] regarding the lack of treatment or, at an administrative

---

[1] SR 16-3p, which superseded SSR 96-7p, became effective on March 28, 2016, well after the ALJ issued her opinion and shortly after briefing in this case concluded. However, SSR 16-3p, by its own terms, was a clarification of existing law rather than a substantive change. *See* SSR 16-3p, 2016 WL 1237954, at *1 (Mar. 24, 2016) (setting SSR 16-3p's effective date); SSR 16-3p, 2016 WL 119029, at *1 (Mar. 16, 2016) (noting that the purpose of 16-3p was to "clarify that subjective symptom evaluation is not an examination of an individual's character" by "eliminating the use of the term 'credibility' from [the SSA's] sub-regulatory policy"); *see also Qualls v. Colvin*, 14-CV-2526, 2016 WL 1392320, at *6 (Apr. 8, 2016). A court reviewing an ALJ's decision may apply a new SSR where the new regulation is a clarification of rather than a substantive change to existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993), *overruled on other grounds by Johns v. Apfel*, 189 F.3d 561 (7th Cir. 1999). Accordingly, although the parties did not address Rule 16-3p in their briefs, they did address SSR 96-7p, which contained the same relevant law as 16-3p. Therefore, the Court has applied SSR 16-3p and concludes that the ALJ's assessment of Plaintiff's non-compliance with his treatment was deficient under both SSR 16-3p and SSR 96-7p.

proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.* Accordingly, the Court will remand for additional proceedings so that the ALJ can incorporate Plaintiff's explanation for avoiding treatment into her assessment of Plaintiff's testimony.

D.    Vocational Expert Testimony

The Plaintiff also argues that the ALJ reversibly erred in failing to adequately assess the vocational expert's testimony. Specifically, Plaintiff argued that the ALJ did not address the VE's testimony that there would be no jobs available for someone who could not frequently use his hands for handling and fingering. The Commissioner asserts that Plaintiff's argument on  this topic is essentially a rehashing of Plaintiff's RFC argument.

The case is being remanded for other reasons described above, and new VE testimony will likely need to be obtained and considered based on the appropriate RFC findings.  The ALJ is cautioned that he must incorporate all relevant limitations in her questioning of the VE.

E.    Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. On remand, the ALJ will likely need to solicit additional evidence, especially evidence concerning Plaintiff's non-compliance with medical treatment.  Accordingly, the Court will remand this matter for further proceedings.

V.    **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Remand [DE 19], **REVERSES** the Administrative Law Judge's decision, and **REMANDS** this matter to the

Commissioner for further proceedings consistent with this opinion. However, the Court **DENIES**

Plaintiff's request to award benefits.

So ORDERED this 9th day of September, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record